IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| STACEY HILTON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 2:20-cv-521-SMD |
| KILOLO KIJAKAZI, *Acting Commissioner of Social Security*, | ) ) ) ) |
| Defendant. | ) ) |

## **OPINION & ORDER**

On January 26, 2018, pro se Plaintiff Stacey Hilton ("Hilton") filed for Supplemental Security Income ("SSI") under Title XVI, alleging disability beginning July 27, 2017. Hilton's application was denied at the initial administrative level. She then requested and received a hearing before an Administrative Law Judge ("ALJ"). With her attorney present, Hilton appeared at the hearing before the ALJ, and the ALJ found that Hilton was not disabled. Hilton then appealed the ALJ's decision to the Social Security Appeals Council, which denied review. Consequently, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration (the "Commissioner"). *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Hilton now appeals that decision under 42 U.S.C. § 405(g).[1] For the reasons that follow, the undersigned AFFIRMS the Commissioner's decision.

---

[1] Under 28 U.S.C. § 636(c), the parties have consented to the undersigned Chief United States Magistrate Judge conducting all proceedings and entering final judgment in this appeal. *Pl.'s Consent* (Doc. 28); *Def.'s Consent* (Doc. 27).

I.      STATUTORY FRAMEWORK

The Social Security Act establishes the framework for determining who is eligible to receive Social Security benefits. *Martin v. Sullivan*, 894 F.2d 1520, 1530 (11th Cir. 1990). In making a benefits determination, an ALJ employs a five-step process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or medically equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

20 C.F.R. § 404.1520(a); 20 C.F.R § 416.920(a)(4). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of not disabled." *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[2] A claimant bears the burden of proof through step four. *See Wolfe v. Chater*, 86 F.3d 1072, 1077 (11th Cir. 1996). The burden shifts to the Commissioner at step five. *Id.*

To perform the fourth and fifth steps, the ALJ must first determine the claimant's Residual Functional Capacity ("RFC"). *Phillips v. Barnhart*, 357 F.3d 1232, 1238-39 (11th Cir. 2004). A claimant's RFC is what the claimant can still do—despite his impairments—based on the relevant evidence within the record. *Id.* The RFC may contain both exertional

---

[2] *McDaniel* is a SSI case. SSI cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa. *See, e.g.*, *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 875 n.* (11th Cir. 2012) (per curiam) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

and non-exertional limitations. *Id.* at 1242-43. Considering the claimant's RFC, the ALJ determines, at step four, whether the claimant can return to past relevant work. *Id.* at 1238. If a claimant cannot return to past work, the ALJ considers, at step five, the claimant's RFC, age, education, and work experience to determine if there are a significant number of jobs available in the national economy the claimant can perform. *Id.* at 1239. To determine if a claimant can adjust to other work, the ALJ may rely on (1) the Medical Vocational Guidelines[3] or (2) the testimony of a vocational expert ("VE").[4] *Id.* at 1239-40.

## II.   STANDARD OF REVIEW

A federal court's review of the Commissioner's decision is limited. A court will affirm the Commissioner's decision if the factual findings are supported by substantial evidence and the correct legal standards were applied. *Kelley v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)). A court may reverse the Commissioner's final decision when it is not supported by substantial evidence or the proper legal standards were not applied in the administrative proceedings. *Carnes v. Sullivan*, 936 F. 2d 1215, 1218 (11th Cir. 1991).[5]

---

[3] The Medical Vocational Guidelines, also known as Grids, allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. *See* 20 C.F.R. pt. 404 subpt. P, app. 2. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

[4] A vocational expert is an "expert on the kinds of jobs an individual can perform based on his or her capacity and impairments." *Phillips*, 357 F.3d at 1240.

[5] A court is required to give deference to factual findings, with close scrutiny to questions of law. *Cornelius v. Sullivan*, 936 F. 2d 1143, 1145 (11th Cir. 1991).

"Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Despite the limited nature of review, a court must scrutinize the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987); *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986). However, a court may not decide the facts anew or substitute its judgment for that of the Commissioner. *Cornelius*, 936 F. 2d at 1145.

## III.   ADMINISTRATIVE PROCEEDINGS

Hilton was forty-eight years old at the time of the ALJ's decision and has a high school education. Tr. 11, 32, 33, 41, 62. She previously worked as an account clerk and cashier. Tr. 33, 41. She alleged disability due to diabetes, venous insufficiency, hypoglycemia, anemia, obesity, back pain, and leg pain. Tr. 33, 155.

In the administrative proceedings, the ALJ made the following findings with respect to the five-step evaluation process for her disability determination. At step one, the ALJ found that Hilton has not engaged in substantial gainful activity since her alleged onset date. Tr. 16. At step two, the ALJ found that Hilton suffers from the following severe impairments: "varicose veins with venous insufficiency and obesity (BMI over 40), with edema (treated with support hose, weight loss and exercise), diabetes mellitus, gastroesophageal reflux disease (GERD), relative polycythemia, all with fatigue[.]" Tr. 16. At step three, the ALJ found that Hilton "does not have an impairment or combination of

impairments that meets or medically equals the severity of one of the listed impairments[.]" Tr. 17.

The ALJ proceeded to determine Hilton's RFC, articulating it as follows:

> [T]he claimant has the residual functional capacity to perform light work . . . except that she can occasionally lift/carry 20 pounds and frequently lift/carry 10; stand and/or walk with normal breaks for a total of 6 hours in an 8 hour workday; sit with normal breaks for a total of about 6 hours in an 8 hour workday; she can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds; she can frequently balance; she can occasionally kneel, crouch, and crawl; and she must avoid all exposure to hazards such as unprotected heights and hazardous machinery[.]

Tr. 17. At steps four and five, the ALJ utilized the testimony of a VE and determined that Hilton could perform "past relevant work both as an account clerk and/or cashier and many other jobs existing in significant numbers in the national economy[.]" Tr. 24. Those jobs included "Data Entry Operator"; "Billing Clerk"; "Cashier Checker"; "Cafeteria Attendant"; and "Ticker Seller." Tr. 25. Accordingly, the ALJ determined that Hilton had not been under a disability since January 26, 2018. Tr. 25.

## IV.   ANALYSIS

Hilton generally asserts that the ALJ erred when he determined she was not disabled. *Pl.'s Br.* (Doc. 22) pp. 2. She states that "the SSA Doctor and the SSA Vocational Expert at the June 18, 2020[6] hearing in Montgomery, Alabama stated clearly to the SSA Judge Crank[7] that the Plaintiff . . . could not work any job as she is going to definitely die."

---

[6] The hearing before the ALJ was held on June 18, 2019. Tr. 31.

[7] The correct name of the ALJ is Frank Klinger. Tr. 31.

*Id.* She therefore asks this Court for an immediate judgment against the Commissioner, as she "may not have much more time to live." *Id.*[8]

Construing Hilton's pro se brief liberally, Hilton argues that (1) the ALJ improperly discounted her subjective symptom testimony, and (2) the ALJ misstated and misapplied the testimony of the non-examining State agency physician and the VE. For the reasons explained below, Hilton's arguments fail, and substantial evidence supports the ALJ's decision.

### A. Substantial Evidence Supports the ALJ's Discount of Hilton's Subjective Symptom Testimony.

Substantial evidence supports the ALJ's discount of Hilton's subjective symptom testimony. Therefore, the ALJ did not err.

#### 1. Hilton's Subjective Symptom Testimony

At the hearing before the ALJ, Hilton claimed that her conditions cause her to "almost collapse"; that she is in "agony" when she sits; and that her vision loss is "so

---

[8] After the Commissioner filed her brief in support of her decision, Hilton filed an additional medical record that postdates the ALJ's decision. Record (Doc. 26) pp. 3-4. The record from Alabama Pathology Associates indicates that Hilton had a portion of skin excised from her left shoulder. *Id.* at 3. She was diagnosed with inflamed pigmented seborrheic keratosis, and the surgical margins were free of pathology. *Id.* It is unclear whether Hilton is attempting to seek remand under 42 U.S.C. § 405(g) based on the consideration of this new evidence.

To obtain remand under 42 U.S.C. § 405(g) for consideration of newly discovered evidence, the claimant must show that: (1) there is new, noncumulative evidence; (2) the evidence is material—i.e., relevant and probative so there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for the failure to submit the evidence at the administrative level. *Vega v. Comm'r of Soc. Sec.*, 265 F.3d 1214, 1218 (11th Cir. 2001). Here, assuming *arguendo* that Hilton could satisfy the first and third prongs, she has made no attempt to show that the evidence is material and the undersigned finds no reason to conclude that it is material. Thus, to the extent Hilton is seeking remand under § 405(g), her argument fails.

severe" that she feels she is "going blind." Tr. 33. She claimed that her "brain hurts a lot especially when [she] eats" due to her venous insufficiency. Tr. 34. Hilton claimed that her skin does not heal correctly and that "[i]t's sort of like walking dead." Tr. 34. She testified that she has severe pain in her legs "[a]nd tiredness for sure." Tr. 34. For her pain, she testified that she takes over-the-counter medicines and props her legs up when she sits. Tr. 34. She claimed that she naps "every two to three hours" "due to the fatigue of the pain" she suffers. Tr. 34-35. She stated that she performs minimal housework and cooking. Tr. 36. She testified that grocery shopping is "one of the hardest things in life" she does. Tr. 36.

### 2. Applicable Law

A claimant can establish disability through personal testimony about pain or other symptoms. *Marksuke v. Comm'r of Soc. Sec.*, 572 F. App'x 762, 766 (11th Cir. 2014). To establish disability based on pain testimony, a claimant must show: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). A claimant's testimony coupled with evidence that meets this standard "is itself sufficient to support a finding of disability." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citations omitted).

If the ALJ determines that a claimant has a medically determinable impairment that could reasonably be expected to produce pain, the ALJ must then evaluate the intensity and

persistence of the claimant's symptoms to determine if they limit her capacity to work. 20 C.F.R. § 404.1529(c)(1). In making this evaluation, the ALJ may consider a variety of factors, including objective medical evidence, treatment history, response to medication and other treatments, medical opinions, sources of pain relief, and the claimant's daily activities. 20 C.F.R. § 404.1529(c)(1)-(4). If an ALJ rejects a claimant's subjective testimony regarding her symptoms, the ALJ "must articulate explicit and adequate reasons for doing so." *Wilson*, 284 F.3d at 1225. These reasons must "be consistent with and supported by the evidence[.]" SSR 16-3p, at *9.

### 3. Application

Substantial evidence supports the ALJ's decision to discount Hilton's subjective symptom testimony. The ALJ found that Hilton's venous insufficiency and other impairments "could reasonably be expected to cause some degree of some of [her] alleged symptoms, at times." Tr. 23. However, the ALJ found that Hilton's testimony was not consistent with or supported by the medical or objective evidence of record. Tr. 23.

To support this conclusion, the ALJ relied on Hilton's medical records. The ALJ noted that Hilton's medical evidence did not reveal ongoing episodes of diabetic ketoacidosis and that there was little evidence of hyperglycemia. Tr. 19. He indicated that, although Hilton's glucose readings were "slightly elevated," she was not prescribed "anything other than Metformin 500 once per day[.]" Tr. 19. In contrast with Hilton's claim that her skin does not heal correctly and looks like the walking dead, the ALJ noted that there was no evidence of deep vein thrombosis, superficial varicosities, stasis dermatitis,

or either recurrent or persistent ulceration of her skin. Tr. 19. And, the ALJ found little medical evidence to support Hilton's alleged limitations due to any gastrointestinal issues. Tr. 20.

In addition to Hilton's medical records, the ALJ relied on two medical opinions to discount her subjective symptom testimony. Tr. 20-22. First, Dr. Krishna Reddy, the State agency medical expert, opined that Hilton could perform a range of light work. Tr. 20. The ALJ found Dr. Reddy's opinion persuasive because it was supported by and consistent with objective findings from the record. Tr. 20-21. Specifically, the ALJ noted that Dr. Reddy based his findings on evidence of Hilton's normal gait, normal lower extremity range of motion and strength, decreased sensation in her toes, and venous stasis changes in her lower extremities. Tr. 20-21. Similarly, the ALJ relied on the opinion of Dr. Anderson, a non-examining medical expert for the Social Security Administration, who testified at the hearing that Hilton should be limited to a full range of light and sedentary work. Tr. 21. The ALJ found Dr. Anderson's opinion to be consistent with Hilton's medical records as a whole. Tr. 22.

Finally, the ALJ found Hilton's reports of daily activities inconsistent with her claims of debilitating pain. Tr. 22. The ALJ noted that, despite her claims that she is in agony, Hilton reports driving a car, shopping for groceries and medicine, paying bills, handling a savings account, and following written and spoken instructions. Tr. 22.

In discounting Hilton's subjective symptom testimony, then, the ALJ relied on objective medical evidence, medical opinions, and Hilton's daily activities. These reasons

were consistent with and supported by the record and therefore provided substantial evidence to discount Hilton's subjective symptom testimony. As such, the ALJ did not err.

### B. The ALJ Did Not Misinterpret or Misapply the Testimony of the Non-Examining State Agency Physician or the VE.

Hilton claims that she should receive benefits because "the SSA Doctor and the SSA Vocational Expert at the June 18, [2019] hearing in Montgomery, Alabama stated clearly to the SSA Judge [Klinger] that the Plaintiff, Stacey Hilton, she, could not work any job as she is going to definitely die." Pl.'s Br. (Doc. 22) p. 2. Hilton therefore requests immediate "SSA benefits, Medicaid and Medicare" because she "may not have much more time to live." *Id.*

Dr. James Anderson, a non-examining State agency physician, testified at the hearing before the ALJ. Tr. 40-41. Dr. Anderson testified as follows:

> [Hilton] has obesity-related asymptomatic type II diabetes mellitus. She has gastroesophageal reflux disease, and she has presbyopia which is correct[ed] with bifocals to 20/20 vision with glasses. She also has obesity-related venous insufficiency of the lower extremities, varicose veins. She was offered treatment with support hose and weight loss and exercise. Records that we have would not meet or equal (INAUDIBLE) disability, in my view. Her restrictions are mostly related to her obesity and varicose veins that would suggest that she would be limited to full range of light and sedentary work activities. She doesn't meet or equal, in my view (INAUDIBLE) of disability.

Tr. 39-40. When questioned about Hilton's venous insufficiency, Dr. Anderson testified that, while there is no cure, there is treatment for her symptoms. Tr. 40-41.

Robert Beadles, Jr., a VE, also testified at the hearing before the ALJ. Tr. 41-44. VE Beadles testified that Hilton, if limited to a full range of light and sedentary work, could perform her past work as well as other jobs in the national economy. Tr. 42. Under an

alternative hypothetical restricting Hilton's ability to work, VE Beadles testified that, again, Hilton could perform her past work as well as other jobs in the national economy. Tr. 43. VE Beadles averred that, if Hilton were to be fully restricted to account for her alleged subjective symptoms, she could not perform her previous jobs or other jobs in the national economy. Tr. 43-44.

There is no evidence that either Dr. Anderson or VE Beadles indicated to the ALJ that Hilton was unable to work due to her impending death. Therefore, to the extent that Hilton is alleging that the ALJ misinterpreted or misapplied the testimony of Dr. Anderson and VE Beadles, her argument is directly contradicted by the record and fails.

## V.  CONCLUSION

The ALJ's decision to discount Hilton's subjective symptom testimony is supported by substantial evidence in the record. Additionally, the ALJ did not misinterpret or misapply the testimony of Dr. Anderson or VE Beadles regarding Hilton's ability to work. Therefore, the undersigned finds no error and the decision of the Commissioner is AFFIRMED.  A separate judgment will issue.

The Clerk of Court is directed to send a copy of this Order to Plaintiff via certified mail.

DONE this 28th day of April, 2022.

Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE